UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 2:20-CR-150-PPS |
| | ) | |
| MURRAY FORD, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Murray Ford seeks compassionate release from prison after being found guilty of two serious offenses. Here's the background: back in 2020, Murray Ford entered a Teachers Federal Credit Union, brandished a silver revolver, and demanded money. He got away with roughly $14,000. Some excellent police work ensued. A car had been seen near the credit union at the time of the robbery and was later found at a nearby apartment complex. After confirming the registration came back to Ford, a search warrant was sought and obtained for Ford's apartment. The execution of the warrant led to the recovery of the money stolen from the credit union, including two bait bills. [DE 50 ¶16.] A silver revolver matching the one that was held by the assailant at the credit union was later recovered in the storage locker assigned to Ford's apartment. [*Id*.] After being confronted with the overwhelming evidence that he was the person who robbed the credit union, Ford confessed.

Ford was later charged with one count of credit union robbery (18 U.S.C. § 2113(a)) and one count of carrying, using, and brandishing a firearm during and in

relation to a crime of violence (18 U.S.C. § 924(c)(1)(A)(ii)). He pleaded guilty to both counts. As a career offender, Ford's total recommended guideline range was 262 to 327 months. [DE 50 at ¶125.] Not surprising given his designation as a career offender, Ford has an *extensive* criminal background dating back almost forty years. The history includes things like burglaries, the unlawful use of a weapon, forgery, retail theft, possession with intent to distribute drugs, robbery, and lots more. [*Id*. at ¶¶ 38-51.]

Frankly, given all of this, Ford got a spectacular plea offer from the government. The parties entered into a binding plea agreement whereby they agreed, subject to my accepting it, that Ford would receive a total combined sentence of between 96 and 114 months. [*Id*. at ¶¶ 3.] I accepted the plea agreement and sentenced Ford to the high end of that agreed upon range, 114 months, consisting of 30 months on Count 1 (the robbery charge) and 84 months on Count 2 (the gun count) consecutive to Count 1. [DE 60 at 2.]

Ford now seeks compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), arguing that he is getting too old for prison and that he is dealing with difficult health challenges including issues with his CPAP machine. [DE 64.] I previously denied Ford's request without prejudice because he did not demonstrate that he had exhausted his administrative appeals. [DE 65.] In a subsequent filing, Ford submitted a letter from his warden that suggested to me that he had indeed exhausted his administrative appeals [DE 66 at 3], so I ordered his petition reinstated and requested briefing from the government. [DE 67.] The government filed a memorandum in opposition to Ford's motion [DE 71], and Ford filed a reply [DE 75].

2

In its response brief, the government continues to argue, a bit half-heartedly, that Ford has not exhausted his administrative appeals. [DE 71 at 5-7.] Exhaustion is indeed an important component of the compassionate release process. *See United States v. Sanford*, 986 F.3d 779, 782 (7th Cir. 2021); *United States v. Williams*, 987 F.3d 700, 703 (7th Cir. 2021). But the government's proof that Ford did not exhaust is less than compelling. They attach an email chain between the assigned Assistant United States Attorney and someone from the Bureau of Prisons as supposed evidence that Ford tried to bypass the administrative process. I frankly don't understand it. By contrast, Ford's evidence—in the form of a simple letter from the warden saying that he received Ford's request for a reduction of sentence based on health concerns and was denying it [DE 66 at 3]—is enough to satisfy me that Ford did exhaust his administrative remedies, and therefore I must move to the merits of Ford's request.

There are two avenues to compassionate release under 18 U.S.C. § 3582(c)(1)(A). One involves a situation where a defendant is at least 70 years of age and other requirements are met. § 3582(c)(1)(A)(ii). Ford is presently 61 years old, so that avenue is closed for now. The second route is for Ford to establish that there are "extraordinary and compelling reasons" warranting a reduction in his sentence. § 3582(c)(1)(A)(i). Taking this route involves a two-step process: Ford must first identify an extraordinary and compelling reason warranting his sentence reduction. Then, if he can meet this high standard, he must show that the sentencing factors in 18 U.S.C. § 3553(a) favor his release. *See United States v. Thacker*, 4 F.4th 569, 576 (7th Cir. 2021). He has done neither.

3

The U.S. Sentencing Guidelines policy statement provides me some guidance in determining what is an "extraordinary and compelling reason" for a reduced sentence—a phrase that is inherently pliable. Most are plainly inapplicable here. *See* USSG § 1B1.13(b)(3-6). However, a couple of the examples in the Guidelines are potentially applicable to Ford. For example, for older defendants like Ford, age can factor into a finding of an "extraordinary and compelling" circumstance but to qualify the defendant must be at least 65 years old, be experiencing a serious deterioration in physical or mental health because of the aging process, and served at least 10 years or 75 percent of his term of imprisonment, whichever is less. USSG § 1B1.13(b)(2). Ford has not met any of these qualifications—he is younger than 65, and he has served less than 75% of his given term of imprisonment.

Medical circumstances of the defendant can also serve as an "extraordinary and compelling" reason to reduce a sentence. *See* USSG § 1B1.13(b)(1). But the medical circumstances have to be *severe*, things like a terminal illness or a debilitating medical condition. *Id*. As best I can tell, Ford's principal complaint is that he sleeps with a CPAP machine [DE 64 at 1] and that, more generally, the healthcare he receives from the BOP is sub-par. While Ford certainly has some health challenges [DE 73 at 3], none are extraordinary. *Id*. He has pain from a bunion, but he is being treated for it [*Id.* at 6]; he suffers from acid reflux (GERD) but is on medication to calm the symptoms [*Id.* at 3]; he has hypertension but is likewise on medication for this as well. [*Id.*] It is true that Ford reported to the BOP that he was having some difficulties with his CPAP machine, [*Id.*],

4

but the records also reflect that BOP has made "multiple attempts" to fix the problem. [*Id*.] Indeed, the government has provided me (under seal) with Ford's medical records while at the BOP and a review of them show an honest effort by the health professionals in the BOP to provide quality care to Ford. [*See generally* DE 73]. In sum, nothing in the records reflect debilitating circumstances that rise to the level of "extraordinary and compelling."

I will add for the sake of completeness, the section 3553(a) factors do not come close to weighing in Ford's favor. *See* 18 U.S.C. § 3553(a). By my count, the bank robbery conviction for which he is presently serving a sentence is his *sixteenth* conviction, [DE 50 at ¶¶38-52], never mind the 22 other arrests. [*Id*. at ¶¶59-80.] One of his prior convictions is for robbing a bank in Polk County, Iowa back in 2007 for which he was paroled in 2016 and was discharged from parole in 2019. [*Id*. at ¶52.] Less than a year later he committed the instant offense. It is true that age is often pointed to as a basis for a reduced sentence because the risk of recidivism is lower for older offenders. *See e.g. United States v. Wright*, 549 F.Supp.3d 122, 127 (D.D.C. 2021)*.* But this case is the exception that challenges the rule. Ford was 44 years old when he committed the robbery in Iowa and he was 59 years old when he committed the instant offense. From 1988 until his conviction in this case, Ford has been in a revolving door of the criminal justice system. And let's not forget that Ford received a highly favorable sentence to begin with. According the presentence report, Ford was a career offender whose Guideline range was 262-327 months. [DE 50 at ¶125.] Ford's sentence of 114 months

5

was roughly 40% of the minimum under the applicable Guideline range. In short, the § 3553(a) factors simply do not favor a shorter sentence here.

## Conclusion

For all of these reasons, Ford's motion for compassionate release [DE 64] is DENIED.

ENTERED: December 3, 2024.

/s/   Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT